UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA LANGLEY,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF INYO, et al.,<br><br>  Defendants. | No. 1:16-cv-01133-DAD-JLT<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 18.) |

This matter came before the court on January 19, 2017, for hearing of defendants' motion to dismiss pursuant to Federal Civil Procedure Rule 12(b)(6). (Doc. No. 18.) Attorney John Sarsfield appeared telephonically on behalf of plaintiff, Julia Langley. Attorney Ashley Wisniewski appeared telephonically on behalf of defendants, the County of Inyo and Margaret Kemp-Williams. After oral argument, the motion was taken under submission. For the reasons stated below, the defendants' motion to dismiss will be denied.

FACTUAL BACKGROUND

On July 29, 2016, plaintiff filed the original complaint in this action against defendants Inyo County, Margaret Kemp-Williams, and Does 1–10. (Doc. No. 1.) This action now proceeds on plaintiff's Second Amended Complaint ("FAC") filed November 17, 2016. (Doc. No. 17.) In the SAC, plaintiff asserts the following two causes of action: (i) a claim against defendant Kemp-Williams under 42 U.S.C. § 1983, based on retaliation in violation of plaintiff's First Amendment

1

rights,[1] and (ii) a claim against defendant Inyo County under the Fair Employment and Housing Act ("FEHA"), California Government Code § 12900 et seq., for retaliation. (*Id.*) Plaintiff seeks the award of economic and non-economic damages, punitive damages against defendant Kemp-Williams, pre-judgment interest and post-judgment interest, and attorneys' fees and costs. (*Id.* at 11–12.)

In her complaint, plaintiff alleges the following. Plaintiff is a licensed California attorney who worked for the Inyo County Office of the County Counsel between February 2015 and July 2015. (*Id.* at 3, ¶ 9.) Her immediate supervisor was defendant Kemp-Williams. (*Id.*)

Prior to February 2015, plaintiff was employed with Tulare County's Office of the County Counsel. (*Id.* at 4, ¶ 10.) In late 2014, plaintiff applied for a position with the County Counsel Office for Inyo County, and was invited to interview for the position. (*Id.* at 4, ¶ 11.) Plaintiff was offered a position following the interview, pending clearance of certain administrative hurdles including a medical examination. (*Id.*) While plaintiff submitted to the medical examination, she objected to several tests and questions posed to her on the grounds that they were unlawfully invasive, and she refused to answer certain questions. (*Id.* at 4, ¶ 12.) She was nonetheless offered employment, and was cleared to work without being required to submit to tests or answer the questions to which she had objected. (*Id.*)

Before starting her employment with defendant Inyo County, plaintiff discussed her concerns about the medical examination with defendant Kemp-Williams, and offered to allow defendants to withdraw their employment offer. (Doc. No. 6 at 5, ¶ 13.) Defendant Kemp-Williams told plaintiff that the employment offer was not being withdrawn. (*Id.*) Defendant Kemp-Williams also indicated to plaintiff that her position would enable her to have a

---

[1] In the SAC, plaintiff identifies her first cause of action as a claim for "Section 1983 Violation of the Fourteenth Amendment." (Doc. No. 17 at 2.) At the January 17, 2017 hearing on the pending motion, plaintiff's counsel clarified that in her SAC plaintiff is alleging only a single § 1983 claim based on a violation of her First Amendment rights as applicable to the states by way of the Fourteenth Amendment. Accordingly, the court will interpret the SAC as having been amended to eliminate all other § 1983 claims asserted by plaintiff in her in the FAC, including those based on violations of plaintiffs' Fourteenth Amendment rights to substantive and procedural due process (Doc. No. 6 at 8).

supervisory role over less experienced attorneys with the county.  (*Id.* at 5, ¶ 15.)

Plaintiff began her employment in February 2015.  (*Id.* at 5, ¶ 14.)  During the course of her employment, defendant Kemp-Williams regularly contacted plaintiff after hours to discuss work-related matters.  (*Id.* at 5, ¶ 16.)  Plaintiff believed that defendant's actions violated county workplace policies and the Fair Labor Standards Act ("FLSA").  (*Id.* at 6, ¶ 17.)  In March 2015, plaintiff discussed these concerns with Inyo County HR personnel.  (*Id.* at 6, ¶¶ 17–18.)

Defendant Kemp-Williams subsequently prepared a memorandum detailing plaintiff's workplace deficiencies, which plaintiff alleges was meritless and designed to retaliate against plaintiff for the objections she had stated to Inyo County HR.  (*Id.* at 6, ¶ 18.)  Defendant Kemp-Williams also began to shout at plaintiff in the workplace, and directed plaintiff not to associate with other Inyo County coworkers.  (*Id.* at 7, ¶ 19.)

As a result of defendant Kemp-Williams's actions, plaintiff began to suffer severe migraine headaches.  (*Id.* at 7, ¶ 20.)  Plaintiff took sick days off of work to recover from those headaches, as directed by her medical care provider.  (*Id.*)  In May 2015, defendant Kemp-Williams discussed these absences with plaintiff, telling plaintiff that she resented employees taking sick leave.  (*Id.* at 7, ¶ 21.)  These comments were intended to coerce plaintiff into not seeking further medical care and recuperation time for her headaches.  (*Id.*)

On May 14, 2015, plaintiff met with representatives from Inyo County HR-Risk Management in order to raise further concerns about defendant Kemp-Williams' actions.  (*Id.* at 8, ¶ 22.)  HR representatives assured plaintiff that she would not be subjected to retaliation as a result.  (*Id.* at 8, ¶ 23.)  However, after the meeting, defendant Kemp-Williams began assigning plaintiff trivial legal tasks below her level of expertise.  (*Id.* at 8, ¶ 23.)  However, defendant Kemp-Williams did not officially demote plaintiff or otherwise initiate formal employment procedures.  (*Id.* at 8, ¶ 24.)

As a result of plaintiff's complaints, defendant Inyo County opened an investigation into defendant Kemp-Williams' conduct.  (*Id.* at 9, ¶ 26.)  On July 21, 2015, plaintiff was informed that the county had completed its investigation and had concluded that plaintiff's complaints were unfounded.  (*Id.*)  Plaintiff was fired from her position on July 30, 2015.  (*Id.* at 9, ¶ 27.)  She was

not given any notice as to her termination, or provided the opportunity to appeal the termination decision. (*Id.* at 10, ¶ 28.) Plaintiff alleges that she was terminated in retaliation for her complaints made to HR regarding defendant Kemp-Williams. (*Id.* at 9–10, ¶ 27.)

On December 5, 2016, defendants filed a motion to dismiss plaintiff's first cause of action brought under 42 U.S.C. § 1983. (Doc. No. 18.) Plaintiff filed her opposition on January 3, 2017, and defendants filed their reply on January 10, 2017. (Doc. Nos. 20, 21.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Novak v. United States*, 795 F.3d 1012, 1017 (9th Cir. 2015). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

Defendants move to dismiss plaintiff's § 1983 claim brought against defendant Kemp-Williams on the basis that plaintiff has not adequately alleged a First Amendment violation.

To state a cognizable First Amendment retaliation claim against a government employer, an employee must allege three elements: (i) that she engaged in protected speech; (ii) that the employer took adverse employment action; and (iii) that her speech was a substantial or motivating factor for the adverse employment action. *See Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996); *Coomes v. Edmonds School Dist. No. 15*, 816 F.3d 1255, 1259–60 (9th Cir. 2016).

An employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern," that is, "when it can be fairly considered to relate to any matter of political, social, or other concern to the community." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968); *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). In contrast, speech is not a matter of public concern if it deals with "individual personnel disputes and grievances" such that it is of "no relevance to the public's evaluation of the performance of governmental agencies." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983); *see also Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011). The determination of whether an employee's speech deals with an issue of public concern is to be made with reference to "the content, form, and context of the speech, with content of the speech being the most important factor." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1069 (9th Cir. 2012) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)); *see also Turner, 788 F.3d at 1210; Coszalter*, 320 F.3d at 973–74 (quoting *Allen v. Scribner*, 812 F.2d 426, 430–36 (9th Cir. 1987); *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999) ("An employee's motivation and the audience chosen for the speech are also relevant to the public-concern inquiry.").

To show that speech is a substantial or motivating factor for adverse employment action, a plaintiff may introduce evidence demonstrating: (i) proximity in time between protected action and alleged retaliation; (ii) an employer's expression of opposition to plaintiff's speech, either to plaintiff or to others; or (iii) the false or pretextual nature of employer's proffered explanations for adverse employment action. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1062 (9th Cir. 2013) (citing *Coszalter*, 320 F.3d at 977). However, "[b]ecause direct evidence of retaliatory

1   intent rarely can be pleaded in a complaint, allegation of a chronology of events from which
2   retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108,
3   1114 (9th Cir. 2012) (citing *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)).

4   As noted above, defendants move to dismiss plaintiff's § 1983 claim, arguing that plaintiff
5   has failed to adequately allege a First Amendment violation. (Doc. No. 18-1 at 2.) Defendants
6   contend that it is not clear whether plaintiff is asserting a First Amendment claim based on
7   retaliation or on some other constitutional violation, and that plaintiff does not sufficiently allege
8   facts supporting her cause of action. (*Id.* at 3–4.) In opposition to defendants' motion to dismiss,
9   plaintiff argues that she has sufficiently pled a First Amendment retaliation claim by alleging that
10  plaintiff suffered adverse employment action after making her complaints to HR. (Doc. No. 20 at
11  3.)

12  Ultimately the court is not persuaded by defendants' arguments. While plaintiff has not
13  clearly titled her first cause of action under § 1983 as a First Amendment retaliation claim, the
14  SAC alleges that plaintiff was censured and ultimately terminated "in retaliation for [her] earlier
15  complaints." (*Id.* at 9, ¶¶ 25, 27.) The court finds that these allegations are sufficiently clear to
16  provide defendants with "fair notice" of plaintiff's First Amendment retaliation claim and the
17  grounds upon which it rests. *Twombly*, 550 U.S. at 555; *see also Alba-Tovar v. United States*,
18  No. 05-1899-MO, 2006 WL 1697629, at *1 (D. Or. June 7, 2006) (declining to dismiss plaintiff's
19  complaint for failing to clearly identify claims after determining that the substance of plaintiff's
20  claim was sufficiently clear). *But see Graves v. Clinton*, No. 2:10–cv–3156 MCE KJN PS, 2011
21  WL 2470741, at *4 (E.D. Cal. June 20, 2011) (granting defendants' motion to dismiss in part
22  because plaintiff "did not employ paragraph numbers or meaningful headers in his complaint").

23  Although a somewhat close question in light of the allegation that plaintiff complained
24  about the medical exam and questions to which she was subjected during the interview process
25  and only to county HR personnel, the undersigned nonetheless concludes that plaintiff's SAC
26  adequately alleges the elements of a First Amendment retaliation claim. In her complaint,
27  plaintiff alleges that she raised various grievances to the Inyo County HR department challenging
28  defendants' interview questions and medical examinations as unlawful. (Doc. No. 17 at 6, 8,

6

¶¶ 17–18, 22–24.)

At the outset, it is important to note that the Ninth Circuit has "defined the scope of the public concern element broadly and adopted a liberal construction of what an issue of public concern is under the First Amendment." *Clairmont*, 632 F.3d at 1103 (quoting *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709–10 (9th Cir.2009)). Moreover, it has been recognized that "[u]nlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern." *Thomas v. City of Beaverton*, 379 F.3d 802, 806–07 (9th Cir. 2004); *see also Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc) (reversing dismissal of a retaliation claim where the speech in question was the plaintiff police officer's statements to police department internal affairs regarding abusive interrogation tactics employed by other officers); *Robinson v. York*, 566 F.3d 817, 822-23 (9th Cir. 2009) (although characterized by defendants as complaints regarding the performance of co-workers and as individual personnel disputes, plaintiff's speech found to involve matters of public concern for purposes of plaintiff's retaliation claim).

Here, plaintiff alleges that she discussed her concerns regarding the legally objectionable interview questions and medical tests with defendant Kemp-Williams and the HR chief of defendant Inyo County *before* commencement of her employment. (Doc. No. 17 at 4-5.) It is thus alleged in the SAC that plaintiff raised her general concerns regarding the legality of those inquiries and tests before any individual personnel dispute regarding her treatment by defendant Kemp-Williams had arisen. Given this context and in light of the specific allegations of the SAC, the undersigned concludes that plaintiff's has adequately alleged speech implicating a matter of public concern that falls within the ambit of First Amendment protection. *See Chateaubriand v. Gaspard*, 97 F.3d 1218, 1222–23 (9th Cir. 1996) (finding that an employee's complaints of illegal campaign activity and pressure to participate in it were of public concern), *reversed on other grounds by Garcetti v. Ceballos*, 547 U.S. 410 (2006); *see also Ceballos v. Garcetti*, 361 F.3d 1174, 1179 (9th Cir. 2004) (finding that a plaintiff engaged in protected speech when he alleged criminal wrongdoing by an officer even though those allegations proved to be erroneous); *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 424 (9th Cir. 1995) (concluding that an

employee's complaints related to mismanagement and potentially unlawful conduct against her supervisor were a public concern though they were recklessly false).  Although plaintiff alleges that she raised her grievances internally with the county HR department, the fact "[t]hat the employee expressed [her] views inside [her] office, rather than publicly, is not dispositive." *Desrochers*, 572 F.3d at 709 (9th Cir. 2009) (emphasizing that "[t]he 'content' element is the greatest single factor in the *Connick* inquiry"); *see also Thomas*, 379 F.3d at 810–11 ("That [plaintiff] chose to convey her views privately rather than publicly is not determinative of whether her expression is entitled to protection.").[2]

Additionally, in the SAC plaintiff alleges that she experienced an adverse employment action in that defendant Kemp-Williams assigned her trivial work below her experience level and ultimately terminated her.  *See Coszalter*, 320 F.3d at 975 ("To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind.  Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden."); *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 750–51 (9th Cir. 2010) (finding that "a verbal warning . . . , an unsatisfactory evaluation, and termination" all constitute adverse employment actions); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (observing that transferring job duties from the target of alleged retaliation to others may constitute an adverse employment action); *cf. Nunez v. City of Los Angeles*, 147 F.3d 867 F.3d 867, 875 (9th Cir. 1998) (noting that being "bad-mouthed and verbally threatened" in the workplace does not constitute adverse action).

/////

---

[2] Plaintiff's complaints about after-hours calls and confrontational behavior, however, do not rise to the level of protected speech under the First Amendment.  *See Turner v. City and County of San Francisco, 788 F.3d 1206, 1210 (9th Cir. 2015)Gillette v. Delmore*, 886 F.2d 1194, 1197 (9th Cir. 1989) ("[S]peech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of 'public concern.'"); *Roe v. City & County of S.F.*, 109 F.3d 578, 585 (9th Cir. 1997) (finding no First Amendment protected speech when plaintiffs "believed their supervisor was a 'micro-manager,' 'autocratic' and 'controlling,' or even that he dressed them down in front of their colleagues").  "[S]aying one's boss is a bully does not necessarily a constitutional case make."  *Roe*, 109 F.3d at 585.

Finally, plaintiff adequately pleads causation.  The SAC alleges that plaintiff filed her first HR complaint in March of 2015 (Doc. No. 17 at 6, ¶¶ 17–18), and was terminated four months afterwards, in July 2015 (*Id.* at 9, ¶ 27).  The SAC also states that that "the decision to fire Plaintiff was made by Defendant Kemp-Williams in retaliation for Plaintiffs' (sic) earlier complaints". (Doc. No. 17 at 9, ¶ 27.)  Altogether, the facts pled by plaintiff—specifically, the proximity of time plaintiff alleges between the protected speech and the adverse employment action—support an inference of retaliatory intent on the part of plaintiffs.  *See Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 750 (9th Cir. 2010) (noting that, when considering whether retaliation is a substantial or motivating factor behind an adverse employment action, the court should consider proximity in time between speech and adverse action); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (noting that "[t]iming of action can properly be considered as circumstantial evidence of retaliatory intent").  Accordingly, taking all facts asserted in the SAC as true, the court finds that plaintiff has adequately stated a claim under § 1983 for First Amendment retaliation.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss plaintiff's § 1983 claim for retaliation in violation of plaintiff's First Amendment rights (Doc. No. 18) is denied.

IT IS SO ORDERED.

Dated: **March 22, 2017**

UNITED STATES DISTRICT JUDGE